IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL D. MILLER, | § | |
| *Plaintiff,* | § § § | SA-22-CV-00406-ESC |
| vs. | § § | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRTION; | § § § § | |
| *Defendant.* | § § | |

**ORDER**

      This order concerns Plaintiff Michael D. Miller's request for review of the administrative denial of his application for disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#15, #17, #18].

      After considering Plaintiff's Opening Brief [#16], Defendant's Brief in Support of the Commissioner's Decision [#19], the transcript ("Tr.") of the Social Security Administration proceedings [#7, #8, #9, #10, #11, #12, #13], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the Administrative Law Judge committed reversible error in failing to consider the effects of Plaintiff's somatic symptom disorder on Plaintiff's ability to work. As a result, the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence, and the Commissioner

failed to satisfy her burden to demonstrate that Plaintiff is capable of performing other work in the national economy despite his limitations.  The undersigned will therefore **VACATE** the Commissioner's decision finding Plaintiff not disabled and **REMAND** this case for further proceedings consistent with this opinion.

### I. Legal Standards

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the administrative law judge's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v.*

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

*Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## II.  Factual and Procedural Background

Plaintiff Michael D. Miller filed his application for DIB in January of 2020, alleging disability beginning August 7, 2018.  (Tr. 193, 206.)  At the time of his DIB application, Miller was a 38-year-old high school graduate with work experience as an electronics mechanic, a water meter installer, and a crane operator.  (Tr. 42, 193, 208, 240.)  Miller also served in the Army for 13 years.  (Tr. 238.)  The related medical conditions upon which Miller based his initial DIB application were acute pancreatitis, hernia surgery, diabetes, disc degeneration in the back, nerve damage, permanent damage to the left shoulder, high blood pressure, tinnitus, radiculopathy, gall bladder removal, and loss of motion in his left arm.  (Tr. 218, 222.)  Miller also has a history of alcohol abuse.  (Tr. 43.)  Adult Function Reports completed by Miller and his girlfriend state that Miller suffers from constant severe back, shoulder, and abdominal pain and can no longer perform manual labor, operate equipment, or take care of his activities of daily living independently.  (Tr. 230–34, 263–64.)

The medical records are voluminous and demonstrate that Miller has had frequent emergency medical incidents and lengthy hospital stays during the years leading up to his disability application and during its pendency and appeal.  These hospital visits included

treatment for alcoholic pancreatitis, severe abdominal pain, sepsis infections, and surgery for gallbladder removal and umbilical hernia repair. (Tr. 22–28.) The majority of other medical records document Miller's ongoing treatment for pain management. (*Id.*)

The only medical record involving the somatic symptom disorder at issue in this appeal is a mental status examination by psychologist Ashley Walters in September 2020. (Tr. 1078–81.) Dr. Walters diagnosed Miller with persistent depressive disorder (with persistent major depressive episode); somatic symptom disorder with predominant pain (persistent and severe), agoraphobia, and PTSD. (Tr. 1081.) During the evaluation, Miller described having chronic pain at a level of 8 out of 10, even with medication, and demonstrated the following symptoms of somatic symptom disorder: excessive thoughts and feelings and behaviors related to his somatic symptoms; disproportionate and persistent thoughts about the seriousness of his symptoms; persistently high levels of anxiety about his health and symptoms; and spending excessive time and energy devoted to his health and symptoms. (Tr. 1078–79.) Dr. Walters described Miller's prognosis as guarded and noted that his symptoms may not improve under current conditions. (Tr. 1081.) Dr. Walters did, however, state that Miller's prognosis may improve with the additional of individual psychotherapy and the assurance of thorough, ongoing medication management. (*Id.*)

Miller's application was denied initially in November 2020, and again upon reconsideration in April 2021. (Tr. 65–84, 85–104.) Following the denial of his claim, Miller requested an administrative hearing. Miller and his non-attorney representative attended the administrative hearing before ALJ Jonathan P. Blucher on October 6, 2021. (Tr. 38–64.) Miller and VE Patricia Ehlinger provided testimony at the hearing. (*Id.*) Miller testified at the hearing about his previous surgeries and physical limitations, including pain from multiple herniated

discs; his need for shoulder replacement surgery; osteoarthritis in his neck, shoulder, and back; complications from his diabetes; and issues with both of his knees. (Tr. 50–56.)

The ALJ issued an unfavorable decision on November 3, 2021. (Tr. 15–31.) The ALJ found that Miller met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Miller has not engaged in substantial gainful activity since August 7, 2018, the alleged disability onset date. (Tr. 17.) At step two, the ALJ found Miller to have the severe impairments of degenerative disc disease of the cervical and lumbar spine, left shoulder degenerative joint disease, pancreatitis, alcoholism, depression, anxiety, and PTSD. (Tr. 17–19.) The ALJ further found that Miller's diabetes, hypertension, and obesity, though medically determinable impairments, are non-severe. (Tr. 18.) The ALJ also determined that Miller's knee issues and nerve damage are not medically determinable impairments. (Tr. 18–19.) Notably, the ALJ did not acknowledge or address Miller's somatic symptom disorder at step two.

At step three, the ALJ found that Miller's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Miller presumptively disabled. (Tr. 19–21.) In reaching this conclusion, the ALJ discussed Miller's pancreatitis but determined that this condition was aggravated by Miller's alcohol use and therefore cannot be a basis for an award of benefits under the governing regulations. (Tr. 19.) The ALJ also considered various mental listings and applied the Paragraph B criteria.[2] (Tr. 19–20.) In doing so, the ALJ concluded that Miller has no more than mild limitations in all four functional areas. (*Id.*)

---

[2] The Paragraph B criteria are four functional areas generally utilized for evaluating mental impairments at all levels of the administrative review process: (1) understand, remember,

Before reaching step four of the analysis, the ALJ found Miller retains the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), meaning Miller can lift and/or carry 20 pounds occasionally and 10 pounds frequently and can stand, walk, and sit six hours in an eight-hour workday with the following additional limitations: no unprotected heights or unprotected hazards; no climbing of ropes, ladders, or scaffolds; no driving; only occasional ramps and stairs; only occasional stooping, crouching, crawling, or kneeling; no overheard reaching with the nondominant arm; only occasional interaction with others; only simple and detailed, but not complex, jobs.  (Tr. 21–29.)  In reaching this conclusion, the ALJ engaged in a lengthy discussion of Miller's symptoms and impairments as documented by the objective medical records and other evidence.  (*Id.*)  The ALJ generally determined that Miller's statements concerning the intensity, persistence and limiting effects of his symptoms and pain are not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 22.)  The ALJ found that the medical records documented only mild degenerative changes to Miller's cervical and lumbar spine and some degenerative changes to the left shoulder but only conservative treatment for pain.  (Tr. 29.)  As for mental limitations, the ALJ emphasized again that the evidence showed some limitations but found these could be accommodated by limiting him to jobs that require no more than occasional interaction with others and that are considered simple and detailed, rather than complex, jobs.  (*Id.*)  Aside from noting that Miller was diagnosed with somatic symptom disorder by Dr. Walters in September 2020 at the mental status examination, the ALJ did not discuss this diagnosis or the effect it might have on his mental and physical impairments in fashioning Miller's RFC.  (Tr. 24.)

---

or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3) (effective Mar. 27, 2017).

At step four, the ALJ found that Miller is unable to perform any of his past relevant work. (Tr. 29.)  At step five, the ALJ concluded that considering Miller's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Miller can perform, such as office helper, food preparation worker, and information clerk. (Tr. 30–31.)  Accordingly, the ALJ determined that Miller is not disabled for purposes of the Act, and therefore not entitled to receive DIB.  (Tr. 31.)

Miller requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on August 19, 2021.  (Tr. 1–11.)  On April 26, 2022, Miller filed the instant case, seeking review of the administrative determination.

### III.  Analysis

Miller argues the ALJ committed reversible error in failing to consider the effects of his somatic symptom disorder diagnosis in evaluating his work-related limitations, particularly those related to his pain.  The Court agrees.

The Commissioner's decision on whether a claimant has a disability rendering the individual unable to work must be based on "all evidence" in the record.  42 U.S.C. § 423(d)(5)(B).  Miller's primary alleged limitation on his ability to work is his constant experience of pain throughout his body related to his degenerative disc disease in his cervical and lumbar spine, his degenerative joint disease in his shoulder, pancreatitis, diabetes, osteoarthritis, and knee issues.

The Fifth Circuit has recognized that pain may constitute a non-exertional impairment limiting the range of jobs a claimant otherwise would be able to perform.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1997).  In other words, "pain alone can be disabling." *Landfried v. Apfel*, 218 F.3d 743, at *3 (5th Cir. 2000).  Pain constitutes a disabling condition when it is

7

"constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (internal quotation and citation omitted). The ALJ has a duty to make affirmative findings regarding the credibility of the claimant's assertions regarding pain. *Landfried*, 218 F.3d at *3.

Here, the ALJ found that the majority of Miller's asserted conditions were medically determinable impairments at step two, and found most of them also to be severe. However, the ALJ did not discuss Miller's diagnosed somatic symptom disorder whatsoever at step two. Thereafter, before step four, the ALJ concluded that the objective medical evidence did not support Miller's claim that his physical impairments are disabling. As a result, the ALJ discredited Miller's subjective statements regarding the degree, intensity, and persistence of the pain he allegedly experiences from his impairments. Although the ALJ listed somatic symptom disorder as a diagnosis by Dr. Walters in generally reciting the medical evidence, there is no indication that the ALJ in fact considered the effects of this disorder in evaluating Miller's credibility or in fashioning the RFC. Given that Miller's somatic symptom disorder provides a possible explanation for the identified discrepancy between the physical degeneration documented in his records and the degree of Miller's described pain, this was error.

As noted above, Dr. Walters diagnosed Miller with somatic symptom disorder with predominant pain, persistent and severe. (Tr. 1078.) Dr. Walters found Miller to be a reliable historian regarding his symptoms and limitations and to present with numerous symptoms associated with somatic symptom disorder as documented in the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (DSM-V). (*Id.*) Importantly, the DSM-V explains that somatic symptom disorder is not a disease involving fabrication of symptoms or malingering; rather, it is a condition in which the actual experience of symptoms does not

8

necessarily correspond with the objective medical evidence. *See Wright v. Standard Ins. Co.*, 3:18-cv-1948-YY, 2021 WL 3852752, at *15 (D. Or. May 6, 2021). *See also Peavler v. Saul*, No. 8:19-CV-283-T-TGW, 2020 WL 4671440, at *4–5 (M.D. Fla. Aug. 12, 2020) ("Notably, the American Psychiatric Association explains that a 'somatic symptom disorder involves a person having a significant focus on physical symptoms, . . . that results in major distress and/or problems functioning[;]' and that people with this disorder are not faking their illnesses.") (citing APA, Somatic Symptom Disorder, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder) (last visited Mar. 8, 2023)).

This is precisely what the medical evidence demonstrates here. Miller testified that he is in constant pain and is unable to perform most of his daily activities or perform any activity for more than a short period of time. Dr. Walter's evaluation states that Miller described chronic pain at a level of 8 out of 10 during the examination and presented with classic symptoms of the disorder—excessive thoughts and feelings and behaviors related to his somatic symptoms; disproportionate and persistent thoughts about the seriousness of his symptoms; persistently high levels of anxiety about his health and symptoms; and spending excessive time and energy devoted to his health and symptoms. (Tr. 1078–79.)

As other courts have recognized, "somatic symptom and other disorders can serve to give credence to alleged symptoms that would be otherwise rejected as unsubstantiated and/or as malingering." *Katie E. B. v. Kijakazi*, No. 20CV2354-MDD, 2022 WL 4595062, at *4 (S.D. Cal. Sept. 30, 2022) (internal quotation and citation omitted). "[T]he very nature of this group of disorders means that if a genuine case is overlooked as a medically determinable impairment at step two, then the ALJ is unlikely to account for the corresponding symptoms at any of the later stages of the disability analysis." *Id.* (internal quotation and citation omitted). Miller's somatic

symptom disorder is a possible explanation for the inconsistency between Miller's symptoms of pain and the medical evidence regarding his physical degeneration. Yet, the disorder was not considered by the ALJ at step two or in determining Miller's RFC.

The Commissioner attempts to characterize Miller's appeal as a challenge to the ALJ's mental RFC. Miller did not make this argument in his brief, and he clarified at the Court's hearing that his arguments do not challenge the mental RFC or the ALJ's Paragraph B determination. Rather, Miller argues (and the Court finds) that the error resulted in an RFC that did not take into consideration the effects of a diagnosed pain disorder that results in a disproportionately severe experience of pain.

This is not harmless error. An error is not harmless if it affected Plaintiff's substantial rights and the outcome of the proceedings. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Several district courts in this jurisdiction and elsewhere have held that a wholesale failure to consider a pain disorder diagnosis like somatic symptom disorder at step two or in fashioning the claimant's RFC is reversible error. In *Peavler*, the ALJ did not analyze or weigh the opinion of the claimant's treating psychiatrist and examining psychologist that claimant suffered from an unspecified somatic symptom disorder in evaluating the claimant's impairments at step two. 2020 WL 4671440, at *4. The court reasoned that the ALJ's mere recitation of the diagnosis was insufficient to ensure that the ALJ had in fact considered the effects of the diagnosis, rather than "overlook[ing] the import of that impairment." *Id.* The court therefore found that the error was not harmless, as the ALJ had failed to state the grounds for his decision to completely disregard the diagnosis. *Id.* at *5. Similarly, in a recent decision from the Western District of Texas, the court held the same—that the failure of the ALJ to discuss the claimant's pain disorder in evaluating his severe limitations at step two made it impossible for the court to

determine if the disorder (and its associated symptoms) had been properly considered by the ALJ at any step of the analysis.  *Olivares v. Berryhill*, No. SA-16-CA-1220-XR, 2018 WL 4035990, at *9 (W.D. Tex. Aug. 23, 2018).  The same conclusion is compelled here.

Again, there is no indication from the record that the ALJ considered Miller's somatic symptom disorder diagnosis and each of the limitations identified by Dr. Walters in the consultative examination in evaluating Miller's impairments, the severity of his pain symptoms, and ultimately his capacity for work.  The Court is thus unable to evaluate whether the ALJ's decision regarding Miller's work-related limitations is supported by substantial evidence.  Moreover, if the ALJ were to credit Miller's subjective descriptions of his pain in light of the somatic symptom disorder diagnosis, the ALJ could have concluded that Miller's pain, which was described as constant, severe, and unrelenting, is totally disabling.  In summary, the ALJ's failure to consider the effects of Miller's somatic symptom disorder is reversible error.

### IV.  Conclusion

Based on the foregoing, the Court finds that the ALJ erred in failing to consider the effects of Miller's somatic symptom disorder on his ability to work.  Therefore, ALJ's RFC determination is not supported by substantial evidence, and the Commissioner failed to satisfy her burden to demonstrate that Miller is capable of performing other work in the national economy despite his limitations.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Miller is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

**IT IS SO ORDERED.**

SIGNED this 20th day of March, 2023.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE